# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **PET-AG, INC.** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: **8:25-cv-3074** |
| v. | ) | |
| | ) | |
| **RUMANTA LLC** | ) | **COMPLAINT** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | **INJUNCTIVE RELIEF REQUESTED** |
| | ) | |

---

Plaintiff Pet-Ag, Inc. ("***Plaintiff***") by and through counsel, and for its Complaint against Rumanta LLC a/k/a Pawfactee ("***Defendant***"), states as follows:

## INTRODUCTION

1.      Defendant is engaged in the unauthorized sale of materially different products under Plaintiff's brand name and using Plaintiff's Trademark.

2.      As a result of Defendant's unauthorized sales, Defendant is harming consumers, deceiving and misleading the consuming public, and violating Plaintiff's rights in its proprietary intellectual property.

3.      These unauthorized sales and infringing activities are illegal and have harmed, and will continue to harm, Plaintiff.

1

**PARTIES**

4.     Plaintiff Pet-Ag, Inc. is a manufacturer and retailer of nutrition and grooming products for pets and livestock (collectively, the "***Products***").

5.     Defendant sells the Products, without Plaintiff's authorization or consent, as a third-party seller on Amazon.com, Inc.'s ("***Amazon***") United States e-commerce platform (the "***Amazon Marketplace***") at the unique Amazon Marketplace storefront "Pawfactee" f/k/a "Rumanta" (the "***Storefront***").

**JURISDICTION/VENUE**

6.     Plaintiff's principal place of business is located at 180 Ryan Drive, Hampshire, Illinois, 60140.

7.     Defendant Rumanta LLC's principal place of business is located at 7901 4th St. N, Ste 6585 St. Petersburg, Florida 33702, in this judicial district and division.

8.     This Court has jurisdiction pursuant to 28 U.S.C. § 1338.

9.     This Court has personal jurisdiction over Defendant pursuant to 28 U.S.C. § 1400(b).

10.     This Court has Supplemental Jurisdiction over the state law claims under 28 U.S.C. § 1367.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

2

## BACKGROUND

### *Plaintiff's Business*

12.    Plaintiff sells the Products bearing various trademarks validly registered with the United States Patent and Trademark Office, including the Trademark            PETAG®            Reg.            No. 1551573 (the "***Trademark***").

13.    Plaintiff's Trademark is distinctive of its quality products and services.

14.    Plaintiff has spent considerable resources to develop, market and protect its Trademark, which has become a symbol of quality in the industry.

15.    Plaintiff prides itself on being, among other things, the leading, #1 cat and dog nutrition brand, receiving over 83,000 five-star ratings and reviews.

16.    As a result of Plaintiff's marketing and sales efforts, the Trademark has become famous in the State of Florida, consistent with Fla. Stat. § 495.151 and throughout the United States, consistent with 15 U.S.C. § 1125(c).

17.    Plaintiff sells the Products on its United States website, through select online retailers, on the Amazon Marketplace, and in traditional brick-and-mortar establishments.

18.    Plaintiff also sells the Products to certain resellers (each, an "***Authorized Reseller***") to the extent they abide by Plaintiff's Authorized Reseller Policy (the "***Resale Policy***"). The Resale Policy is attached as **Exhibit A.**

4908-2832-3703, v. 1
0099993\097844\17061931v1

**The Resale Policy**

19.     Plaintiff uses the Resale Policy to: (i) protect its customers by ensuring the quality of its Products, their presentation, and the associated services meet certain standards; (ii) protect its Authorized Resellers by promoting fair competition between Authorized Resellers; and (iii) protect its brand, its goodwill, and its valuable intellectual property, including its proprietary images, designs, content, and the Trademark.

20.     The Resale Policy requires Authorized Resellers to abide by certain quality controls related to the origins, packaging, storing, and shipping of the Products they sell (collectively, referred to herein as the "***Quality Controls***").

21.     Specifically, all Authorized Resellers agree to comply with the following:

## PET-AG, INC. PRODUCT CARE, CUSTOMER SERVICE, AND OTHER QUALITY CONTROLS

1. Comply with all instructions provided by Pet-Ag regarding the storage, handling, shipping, disposal, or other aspect of the Products, including instructions provided on Product labels and asset forth in Pet-Ag's Safety Data Sheets, as may be revised by Pet-Ag from time to time.

4

2. Manage Product inventory on a "first-in, first-out" (FIFO) basis, with older inventory being sold before newer inventory of the same Product.

3. Store Products in properly labeled containers, tightly closed, and in a cool, dry, and well- ventilated place where the Products and the Products' packaging are not susceptible to excessive heat, open flames, other sources of ignition, or freezing.

4. Additionally, Products must be stored away from direct sunlight and in a low humidity environment where the Products and packaging are not susceptible to mold, mildew, or other physical damage. Products must be handled in accordance with good industrial hygiene and safety practices.

5. Sell Products in their original packaging. Relabeling, repackaging (including the separation of bundled Products or the bundling of Products), and other alterations to Products or their packaging are not permitted without Pet-Ag's separate written consent.

5

6. Products must bear their original label or literature on or accompanying the Products, including any serial number, batch or lot code, or other identifying information on Products or their packaging.

7. Products must not be diluted.

8. Any Product that has been returned, opened, or repackaged cannot be resold whatsoever.

9. Promptly upon receipt of the Products, the Products and their packaging must be inspected for damage, defect, broken seals, spoilage (as applicable), evidence of tampering, or other nonconformance (a "Defect"). If any Defect is identified, do not offer the Product for sale and promptly contact your Authorized Distributor for the appropriate return process.

10. Maintain the appropriate shelf life and/or expiration date for all Products. Inspect inventory regularly for Products past their shelf life and expired or soon-to-be expired Products and remove those Products from inventory. Do not sell any Products that are expired or within thirty (30) days of expiration without Pet-Ag's permission, and

6

contact brandsupport@petag.com with any questions. Destroy or dispose of any such Products in accordance with instructions provided by Pet-Ag.

11. Be familiar with the ingredients and intended use of all Products marketed for sale and obtain sufficient Product knowledge to advise customers on the selection and safe use of the Products, as well as any applicable guarantee or return policy. Be available to respond to customer questions and concerns both before and after sale of the Products and endeavor to respond to customer inquiries promptly.

12. Cooperate with Pet-Ag with respect to any Product tracking systems that may be implemented from time to time.

13. Cooperate with Pet-Ag with respect to any Product recall or other product safety dissemination efforts.

14. Report to Pet-Ag any customer complaint or adverse claim regarding the Products' quality of which you become aware and assist Pet-Ag in investigating any

7

such complaints or adverse claims. Contact Pet-Ag

Consumer Affairs at 1-800-323-0877.

15. Cooperate with Pet-Ag in the investigation and
resolution of any quality or customer service issues
related to the sale of the Products, including disclosing
information regarding Product sources, shipment, and
handling.

22.    Additionally, Authorized Resellers must have a mechanism for
receiving customer feedback, and shall use reasonable efforts to address all customer
feedback and inquiries received in a timely manner.

23.    Authorized Resellers shall not use any third-party fulfillment service to
store inventory or fulfill orders for the Products, except and to the extent that such
third party is an Authorized Distributor of Plaintiff. Authorized Resellers shall not
fulfill orders in any way that results in the shipped Product coming from stock other
than Authorized Reseller's stock, unless such stock of Products is being fulfilled
through an Authorized Distributor of Plaintiff.

24.    Authorized Resellers in compliance with the Resale Policy may offer
the Pet-Ag Product Promise Satisfaction Guarantee (the "***Guarantee***"). The
Guarantee is attached as **Exhibit B**.

8

25.    The Guarantee provides that if a customer is not satisfied with a Product purchased from Plaintiff or one of its Authorized Resellers, Plaintiff or the authorized seller will replace or refund the Product.

26.    The Guarantee is void on Products sold by unauthorized resellers, including internet websites and storefronts on online marketplace websites, that do not comply with the Resale Policy.

27.    Resellers such as Defendant which sell on the Amazon Marketplace cannot offer the Guarantee.

28.    Accordingly, Defendant is selling Products without the Guarantee.

### ***Brand Protections***

29.    In addition to protecting customers, the Resale Policy is designed to encourage fair competition between Authorized Resellers and ensure that becoming an Authorized Reseller is a worthwhile venture.

30.    By requiring resellers to abide by certain quality controls, prohibiting sales practices that sacrifice Product quality, and directing resellers to purchase from approved sources, the Resale Policy ensures a level playing field for Plaintiff's distributors and retailers.

31.    Healthy, legitimate competition is good for Plaintiff's customers and Plaintiff's Authorized Resellers.

4908-2832-3703, v. 1
0099993\097844\17061931v1

32.    Plaintiff has invested significant time, effort, and resources to ensure that the consuming public has a positive perception of Plaintiff and the Products.

33.    Plaintiff's reputation and goodwill is a valuable resource and one which Plaintiff is careful to protect.

34.    Resellers who provide materially altered and inferior Products harm Plaintiff's reputation and goodwill because the failings of such Products are associated with Plaintiff, not with the resellers.

35.    Plaintiff has implemented these measures to preserve brand integrity, maintain the high quality of the Products, and ensure customers are receiving genuine, defect-free products.

36.    When sellers fail to abide by these requirements, it poses risks to customers and damages the goodwill and reputation of Plaintiff.

### *The Growth of E-Commerce*

37.    The explosion of e-commerce websites, particularly Amazon, has created problems for manufacturers in terms of ensuring that products being sold are genuine, defect-free products.

38.    In this e-commerce age, unauthorized resellers can obtain a manufacturer's products from a variety of sources and sell them anonymously online.

10

39.    Many times, these products may be materially different in that they are damaged, expired, sold without warranty, or of an inferior quality. However, given the nature of e-commerce sales, consumers unknowingly purchase these products believing them to be genuine.

40.    Indeed, on Amazon, all sales of a particular product are sold under a single Amazon Standard Identification Number (ASIN), so consumers face an even more significant challenge trying to determine whether a product is coming from an authorized reseller offering genuine products or from an unauthorized reseller offering an inferior version of such products.

41.    This is precisely the problem that e-commerce websites create; anonymous third parties sell products that may be inferior or defective and consumers are ultimately harmed when they receive non-genuine products.

42.    Consumers then associate that harm with the manufacturer, not the anonymous reseller.

### ***Defendant Begins Selling the Products Without Authorization***

43.    At least since July 2025, Defendant has been selling materially altered Products bearing the Trademark without authorization, without Plaintiff's consent, and in violation of the Resale Policy.

44.    Defendant sells the Products online on Amazon, through the Storefront and possibly other websites, evidence of which is attached hereto as **Exhibit C**.

4908-2832-3703, v. 1
0099993\097844\17061931v1

45.    Because Defendant is an unauthorized reseller of the Products, Plaintiff cannot verify that Defendant abides by Plaintiff's Quality Controls.

46.    Upon information and belief, Defendant does not abide by the Quality Controls nor does Defendant offer the same level of customer service as Authorized Resellers.

47.    Improperly handled Products could be damaged, be subjected to adverse conditions, or experience other unexpected issues.

48.    Per the terms of the Resale Policy, Defendant is prohibited from selling on Amazon.

49.    Because Plaintiff cannot verify that Defendant abides by Plaintiff's Resale Policy, Quality Controls or its customer service requirements, and Defendant is in breach of the Resale Policy by selling on Amazon, Defendant cannot offer the Guarantee.

50.    Products sold by Defendant do not come with the Guarantee.

51.    Amazon's Marketplace Items Condition Guidelines[1] require that any product that is listed as "New" come with the "Original manufacturer's warranty, if any."

---

[1] *See Marketplace Items Condition Guidelines*, URL:
https://www.amazon.com/gp/help/customer/display.html?nodeId=201889720 (last visited Nov. 5, 2025).

4908-2832-3703, v. 1
0099993\097844\17061931v1

52.     Defendant lists the Products for sale as "New" despite the fact that Products sold by Defendant do not come with the Guarantee.

53.     These issues mean that customers are not getting what they expect or what they pay for. They are receiving materially altered products and the differences have a materially detrimental impact on the customer's experience with the Products and, accordingly, with Plaintiff's brand.

54.     As a result, the Products sold by Defendant are non-genuine Products, and such Products are inferior to Products sold by Authorized Resellers, as they do not come with a Guarantee or the same suite of services as Products sold by Authorized Resellers.

55.     By selling non-genuine and inferior Products, Defendant is harming consumers and is infringing on Plaintiff's rights in and to the Trademark.

56.     The sale of non-genuine and inferior Products has tarnished and diluted the goodwill and distinctive quality of the Trademark.

### *Plaintiff Demands Defendant Cease Selling the Products*

57.     On several occasions, beginning on July 15, 2025, undersigned counsel on behalf of Plaintiff contacted Defendant to request the Defendant cease its infringing sales of the Products (the "***First Letter***").

58.     However, Defendant did not discontinue its sales.

59.    On July 30, 2025, undersigned counsel sent a second letter (the "***Second Letter***"), again informing Defendant that Defendant's sales were unauthorized and in violation of Plaintiff's intellectual property rights.

60.    The Second Letter also informed Defendant that its continued sale of Products now amounted to willful Trademark infringement and Plaintiff again demanded that Defendant immediately cease selling the Products.

61.    On August 14, 2025, undersigned counsel sent a final demand letter (the "***Final Letter***"), again informing Defendant that Defendant's continued sales were unauthorized and in violation of Plaintiff's intellectual property rights.

62.    On September 24, 2025, undersigned counsel sent a final warning letter (the "***Final Warning***"), to put Defendant on notice that if Defendant continued its unauthorized sales beyond August 28, 2025, that Plaintiff may pursue legal remedies. The First Letter, Second Letter, Final Letter, and Final Warning are attached hereto as **Exhibit D**.

63.    The Final Warning warned Defendant that a lawsuit would be filed against Defendant for its continued sales beyond October 1, 2025.

64.    Defendant continued to sell the Products, even after receiving four prior notices.

65.    As of the date hereof, Defendant continues to sell the Products.

14

## Claim One
## Declaratory Judgment/Injunctive Relief

66.   Plaintiff incorporates and realleges paragraphs 1-65 as if fully restated herein.

67.   An actual and justiciable controversy exists between Plaintiff and Defendant related to whether Defendant has the right to sell the Products without Plaintiff's consent and in violation of Plaintiff's rights in the Trademark.

68.   The Court, pursuant to 28 U.S.C. §2201, Fed. R. Civ. P. 57, and Fla. Stat. § 495.151, should declare that Defendant has no right or authorization to sell the Products, or use the Trademark, as these actions have harmed and continue to harm Plaintiff in an amount to be determined at trial.

69.   The Court should further declare that the demand letters gave Defendant actual notice that it was not authorized to use the Trademark, and any continued use of the Trademark or unauthorized sales of the Products constitutes willful violations of Plaintiff's rights in the Trademark.

70.   Such a declaration is proper, pursuant to 28 U.S.C. § 2201 and Fla. Stat. § 495.151, because the declaration would terminate the actual and justiciable controversy between Plaintiff and Defendant and remove any uncertainty with respect to this issue.

71.   Additionally, the Court should enjoin Defendant from any further sales of the Products and use of the Trademark.

15

## Claim Two
## Unfair Competition (15 U.S.C. § 45)

72.    Plaintiff incorporates and realleges paragraphs 1-65 as if fully restated herein.

73.    Plaintiff is the owner of the Trademark.

74.    The Trademark is a valid and subsisting mark, in full force and effect, and registered with the United States Patent and Trademark Office.

75.    The Trademark is arbitrary, suggestive, and has acquired a secondary meaning.

76.    Defendant's unauthorized and deceptive use of the Trademark in connection with its sale of the Products is without Plaintiff's authorization or consent.

77.    Defendant's use of the Trademark in connection with the unauthorized advertising, promotion, and sale of Products bearing the Trademark is likely to cause confusion because it falsely suggests that the Products Defendant offers for sale are genuine and authentic Products that come with the Guarantee, when in fact they do not.

78.    Defendant's use of the Trademark is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

4908-2832-3703, v. 1
0099993\097844\17061931v1

79.    Because of Defendant's actions, consumer confusion as to the source or sponsorship is likely.

80.    As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

81.    Defendant's actions, including, but not limited to, its unauthorized sale of the Products and its unauthorized use of the Trademark, constitute unfair competition.

82.    Defendant's actions have damaged Plaintiff in the form of, *inter alia*, lost sales, interference with current and prospective business relationships, Trademark infringement, Trademark dilution, and tarnishment of Plaintiff's brand, goodwill, and reputation.

83.    As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

**Claim Three**
**Trademark Infringement (15 U.S.C. § 1114)**

84.    Plaintiff incorporates and realleges paragraphs 1-65 as if fully restated herein.

85.    Plaintiff is the owner of the Trademark.

86.    The Trademark is a valid and subsisting mark in full force and effect, and registered with the United States Patent and Trademark Office.

87.    The Trademark is inherently distinctive.

4908-2832-3703, v. 1
0099993\097844\17061931v1

88.    Plaintiff has extensively used the Trademark in connection with the sale of its Products for decades, nationwide.

89.    Defendant uses the Trademark in connection with its sale of the Products without Plaintiff's authorization or consent.

90.    The Products sold by Defendant bearing the Trademark do not come with the Guarantee, and upon information and belief, Defendant does not abide by the Quality Controls.

91.    Because the Products sold by Defendant do not have the Guarantee and are not handled with the requisite Quality Controls these Products are not genuine and are materially different from Products sold by Plaintiff or Authorized Resellers.

92.    Defendant's unauthorized sale of the Products bearing the Trademark has infringed on, and damages the value of, the Trademark.

93.    Defendant's use of the Trademark is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products sold by Defendant come with the Guarantee and the same suite of services as Products sold by Plaintiff or Authorized Resellers, when, in fact, they do not.

94.    Confusion is more likely given that Defendant lists the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition

4908-2832-3703, v. 1
0099993\097844\17061931v1

Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendant's sale of the Products.

95.    Defendant's use of the Trademark is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

96.    Plaintiff informed Defendant that its sales of the Products infringed on Plaintiff's rights in the Trademark.

97.    As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademark, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

98.    Plaintiff is entitled to recover damages from Defendant's infringement and disgorgement of any profits from Defendant's infringing sales of the Products.

99.    Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages pursuant to 15 U.S.C § 1117(a) because Defendant's infringement of the Trademark is willful.

### Claim Four
### Trademark Dilution (15 U.S.C. § 1125(c))

100.    Plaintiff incorporates and realleges paragraphs 1-65 as if fully restated herein.

101.    Plaintiff is the owner of the Trademark.

102.   The Trademark is a valid and subsisting mark, in full force and effect, and registered with the United States Patent and Trademark Office.

103.   Plaintiff has continuously used the Trademark in commerce and has spent considerable sums in time and money to promote and advertise its Products using the Trademark.

104.   Plaintiff sells the Products bearing the Trademark throughout the United States.

105.   Customers have come to associate the Trademark with Plaintiff and the Products.

106.   Customers associate the Trademark with high-quality products.

107.   Defendant is using the Trademark in connection with the sale of the Products.

108.   However, the Products sold by Defendant are materially different than genuine Products sold by Plaintiff because Defendant's products do not come with the Guarantee and upon information and belief, are not sold in accordance with the Quality Controls.

109.   Because Defendant is selling an inferior product, Defendant's use of the Trademark is causing the dilution of the Trademark by blurring and tarnishing the reputation and goodwill associated with the Trademark in violation of 15 U.S.C. § 1125(c).

20

110.   As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademark, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

111.   Plaintiff is entitled to recover damages from Defendant's infringement of the Trademark and disgorgement of any profits from Defendant's infringing sales of the Products.

112.   Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages pursuant to 15 U.S.C. § 1117(a) because Defendant's infringement of the Trademark is willful.

<u>**Claim Five**</u>
**False Advertising (15 U.S.C. § 1125(a)(1)(B))**

113.   Plaintiff incorporates and realleges paragraphs 1-65 as if fully restated herein.

114.   Plaintiff is the owner of the Trademark.

115.   Plaintiff has registered the Trademark with the United States Patent and Trademark Office.

116.   The Trademark is a valid and subsisting mark in full force and effect.

117.   Through the Storefront, Defendant has willfully and knowingly used, and continued to use, the Trademark in interstate commerce for purposes of advertising, promoting, and selling the Products without Plaintiff's consent.

21

118.   Defendant's advertisements and promotions of the Products unlawfully using the Trademark have been disseminated throughout commerce to consumers across the country.

119.   Defendant has used, and continues to use, the Trademark to falsely advertise that the Products Defendant sells come with the Guarantee.

120.   Such advertisement is false because the Guarantee does not come with the Products sold by Defendant.

121.   Products purchased from Plaintiff and its Authorized Resellers come with the Guarantee.

122.   Plaintiff cannot ensure the source, legitimacy, or quality of products sold by unauthorized resellers such as Defendant.

123.   Therefore, products sold by unauthorized resellers like Defendant do not come with the Guarantee.

124.   Products listed on Amazon as "New" must come with any warranty offered by the manufacturer.

125.   Defendant lists the Products as "New" on the Storefront.

126.   Such representation is false because the Products sold by Defendant do not come with the Guarantee.

4908-2832-3703, v. 1
0099993\097844\17061931v1

127.    Defendant's use of the Trademark in connection with the unauthorized advertising, promotion, and sale of Products bearing the Trademark misrepresents the

nature, characteristics, qualities, and origin of Defendant's Products because it suggests that the Products come with the Guarantee when, in fact, they do not.

128.    Defendant's use of the Trademark in connection with the unauthorized advertising, promotion, and sale of Products bearing the Trademark is likely to cause confusion, cause mistake, or deceive because it falsely suggests that the Products Defendant offers for sale are genuine and authentic Products that come with the Guarantee, when in fact they do not.

129.    Defendant's unauthorized and deceptive use of the Trademark is material and likely to influence customers to purchase the Products they sell, as consumers are likely to believe that Products Defendant advertises using the Trademark are genuine Products that come with the Guarantee when, in fact, they do not.

130.    Defendant's unauthorized use of the Trademark in advertising and sale of the Products without Plaintiff's consent infringes on the Trademark.

131.    As a proximate result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

4908-2832-3703, v. 1
0099993\097844\17061931v1

132.    Plaintiff is entitled to recover its damages caused by Defendant's infringement of the Trademark and disgorge Defendant's profits from their willfully infringing sales and unjust enrichment.

133.    Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendant is permanently enjoined, Plaintiff will continue to suffer.

134.    Plaintiff is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Trademark.

<u>**Claim Six**</u>
**Unfair Competition (Fla. Stat. § 501.204)**

135.    Plaintiff incorporates and realleges paragraphs 1-65 as if fully restated herein.

136.    Plaintiff is the owner of the Trademark.

137.    The Trademark is a valid and subsisting mark, in full force and effect, and registered with the United States Patent and Trademark Office.

138.    Defendant's unauthorized and deceptive use of the Trademark in connection with its sale of the Products is without Plaintiff's authorization or consent in the State of Florida and throughout the United States.

4908-2832-3703, v. 1
0099993\097844\17061931v1

139.    The Products sold by Defendant bearing the Trademark do not come with the Guarantee, and upon information and belief, Defendant does not abide by the Quality Controls.

140.    Because the Products sold by Defendant do not have the Guarantee and are not sold in accordance with the Quality Controls, these Products are not genuine and are materially different from Products sold by Plaintiff or Authorized Resellers.

141.    Confusion is more likely given that Defendant lists the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendant's sale of the Products.

142.    Defendant's use of the Trademark is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

143.    Defendant's unauthorized sale of the Products bearing the Trademark has infringed on and damages the value of the Trademark.

144.    Plaintiff informed Defendant that its sales of the Products infringed on Plaintiff's rights in the Trademark.

145.    As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademark, Plaintiff has suffered and continues to suffer

immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

146.   Plaintiff is entitled to recover damages from Defendant's infringement of the Trademark and disgorgement of any profits from Defendant's infringing sales of the Products.

147.   Plaintiff is further entitled to injunctive relief and increased damages pursuant to 15 U.S.C. §45(I) because Defendant's sale of the Products bearing the Trademark is unlawful.

## **<u>Claim Seven</u>**
## **Trademark Dilution (Fla. Stat. § 495.151)**

148.   Plaintiff incorporates and realleges paragraphs 1-65 as if fully restated herein.

149.   Plaintiff is the owner of the Trademark.

150.   The Trademark is a valid and subsisting mark, in full force and effect, and registered with the United States Patent and Trademark Office.

151.   Plaintiff has continuously used the Trademark in commerce and has spent considerable sums in time and money to promote and advertise its Products using the Trademark.

152.   Plaintiff sells the Products bearing the Trademark throughout the United States.

26

153.   Customers have come to associate the Trademark with Plaintiff and the Products.

154.   Customers associate the Trademark with high-quality products, and Plaintiff prides itself on being, among other things, the leading #1 cat and dog nutrition brand, receiving over 83,000 five-star ratings and reviews.

155.   Defendant is willfully and intentionally using the Trademark in connection with the sale of the Products in the State of Florida and throughout the United States.

156.   However, the Products sold by Defendant are materially different than genuine Products sold by Plaintiff because Defendant's products do not come with the Guarantee and upon information and belief, are not sold in accordance with the Quality Controls.

157.   Because Defendant is selling an inferior product, Defendant's use of the Trademark is causing the dilution of the Trademark by blurring and tarnishing the reputation and goodwill associated with the Trademark in violation of Fla. Stat. § 495.151.

158.   As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademark, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

4908-2832-3703, v. 1
0099993\097844\17061931v1

159.    Plaintiff is entitled to recover damages from Defendant's infringement of the Trademark and disgorgement of any profits from Defendant's infringing sales of the Products.

160.    Plaintiff is further entitled to injunctive relief and increased damages pursuant to Fla. Stat. § 495.151(2) because Defendant's infringement of the Trademark is willful.

## Claim Eight
### False Advertising (Fla. Stat. § 817.41)

161.    Plaintiff incorporates and realleges paragraphs 1-65 as if fully restated herein.

162.    Plaintiff is the owner of the Trademark.

163.    Plaintiff has registered the Trademark with the United States Patent and Trademark Office.

164.    The Trademark is a valid and subsisting mark in full force and effect.

165.    Through the Storefront, Defendant has willfully and knowingly used, and continued to use, the Trademark in interstate commerce for purposes of advertising, promoting, and selling the Products without Plaintiff's consent.

166.    Defendant's advertisements and promotions of the Products unlawfully using the Trademark have been disseminated throughout commerce to consumers In the State of Florida and across the country.

167.   Defendant has used, and continues to use, the Trademark to falsely advertise that the Products Defendant sells come with the Guarantee.

168.   Such advertisement is false because the Guarantee does not come with the Products sold by Defendant.

169.   Products purchased from Plaintiff and its Authorized Resellers come with the Guarantee.

170.   Plaintiff cannot ensure the source, legitimacy, or quality of products sold by unauthorized resellers such as Defendant.

171.   Therefore, products sold by unauthorized resellers like Defendant do not come with the Guarantee.

172.   Products listed on Amazon as "New" must come with any warranty offered by the manufacturer.

173.   Defendant intentionally lists the Products as "New" on the Storefront.

174.   Such representation is false because the Products sold by Defendant do not come with the Guarantee.

175.   Defendant's willful use of the Trademark in connection with the unauthorized advertising, promotion, and sale of Products bearing the Trademark misrepresents the nature, characteristics, qualities, and origin of Defendant's Products because it suggests that the Products come with the Guarantee when, in fact, they do not.

4908-2832-3703, v. 1
0099993\097844\17061931v1

176.   Defendant's use of the Trademark in connection with the unauthorized advertising, promotion, and sale of Products bearing the Trademark is likely to cause confusion, cause mistake, or deceive because it falsely suggests that the Products Defendant offers for sale are genuine and authentic Products that come with the Guarantee, when in fact they do not.

177.   Defendant's unauthorized and deceptive use of the Trademark is material and likely to influence customers to purchase the Products they sell, as consumers are likely to believe that Products Defendant advertises using the Trademark are genuine Products that come with the Guarantee when, in fact, they do not.

178.   Defendant's unauthorized use of the Trademark in advertising and sale of the Products without Plaintiff's consent infringes on the Trademark.

179.   As a proximate result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

180.   Plaintiff is entitled to recover its damages caused by Defendant's infringement of the Trademark and disgorge Defendant's profits from their willfully infringing sales and unjust enrichment.

181.   Plaintiff is entitled to injunctive relief under because it has no adequate remedy at law for Defendants' infringement and unless Defendant is permanently enjoined, Plaintiff will continue to suffer.

182.   Plaintiff is entitled to enhanced damages and attorneys' fees and punitive damages under Fla. Stat. § 817.41(6) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Trademark.

**WHEREFORE,** Plaintiff prays for judgment as follows:

A.    As to Count One, a declaratory judgment stating that Defendant is unauthorized to sell the Products and permanently enjoin Defendant from any further sales of the Products;

B.    As to Count Two, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of its profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademark or selling or offering for sale the Products;

C.    As to Count Three, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of its profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademark or selling or offering for sale the Products;

D.    As to Count Four, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of its profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademark or selling or offering for sale the Products;

E.    As to Count Five, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of its profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademark or selling or offering for sale the Products;

F.    As to Count Six, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of its

4908-2832-3703, v. 1
0099993\097844\17061931v1

profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademark or selling or offering for sale the Products;

G.     As to Count Seven, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of its profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademark or selling or offering for sale the Products; and

H.     As to Count Eight, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of its profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademark or selling or offering for sale the Products.

4908-2832-3703, v. 1
0099993\097844\17061931v1

Dated: <u>November 7, 2025</u>                    Respectfully submitted,

**LOWNDES, DROSDICK, DOSTER, KANTOR & REED, PA**

By: <u>*/s/ Jon M. Gibbs*</u>
Jon M. Gibbs
Fla. Bar No.: 494534
Allison Gray
Fla. Bar No.: 1050244
215 N. Eola Dr.
Orlando, FL 32801
Phone: (407) 843-4600
Fax: (407) 843-4444
Email: jon.gibbs@lowndes-law.com
          allison.gray@lowndes-law.com

**KOHRMAN JACKSON & KRANTZ LLP**
Alex E. Jones (*pro hac vice* forthcoming)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114
Phone: 216-696-8700
Fax: 216-621-6536
Email: aej@kjk.com

*Counsel for Pet-AG, Inc.*

33

## <u>JURY DEMAND</u>

Plaintiff respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38.


By: */s/ Jon M. Gibbs*
Jon M. Gibbs

4908-2832-3703, v. 1
0099993\097844\17061931v1